# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

DANIEL GARCIA,

    Plaintiff,

v.

T. HASLEY, *et al.*,

    Defendants.

Case No. CV 16-00912-JGB AFM

**ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**

On February 9, 2016, plaintiff, an inmate presently held at the Kern Valley State Prison in Delano, California, filed a Complaint in this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He subsequently was granted leave to proceed without prepayment of the full filing fee. The Complaint named as defendants T. Hasley and Esrebar Cardenas, both Correctional Officers at California State Prison, Los Angeles County ("CSP-LAC"). Plaintiff's claims arose from an incident at CSP-LAC on December 28, 2012, when the correctional officers are alleged to have used excessive force. Plaintiff sought declaratory and injunctive relief as well as monetary damages.

In accordance with the terms of the "Prison Litigation Reform Act of 1995" ("PLRA"), the Court screened the Complaint prior to ordering service for purposes of determining whether the action is frivolous or malicious; or fails to state a claim

on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c)(1).

Following careful review of the Complaint, the Court found that its allegations appeared insufficient to state any claim upon which relief may be granted. Accordingly, on March 9, 2016, the Complaint was dismissed with leave to amend, and plaintiff was ordered, if he wished to pursue the action, to file a First Amended Complaint no later than April 20, 2016. Further, plaintiff was admonished that, if he failed to timely file a First Amended Complaint, or failed to remedy the deficiencies of his pleading, the Court would recommend that this action be dismissed without leave to amend and with prejudice. (*See* ECF No. 8.)

Following an extension of time, plaintiff filed a First Amended Complaint ("FAC") on June 24, 2016. (ECF No. 14.) In the FAC, plaintiff named as defendants Warden Soto; Assistant Warden R. Fritz; Chief of Inmate Appeals Lozano; Sergeant Gamboa, with the Investigative Services Unit; various supervisory defendants; and Correctional Officers Hasley, Cardenas, and Berryhill. All defendants were named in their individual capacities. (*See* ECF No 14 at 3-6.) Plaintiff raised three claims, all arising from an incident that occurred at approximately 14:45 hours on December 28, 2012, and the subsequent Rules Violation Report ("RVR") that was filed against plaintiff. (*Id.* at 3, 10, 12, 14.) Plaintiff sought declarative and injunctive relief, including a rehearing on the RVR, and damages. (*Id.* at 28-31.)

Once again, in accordance with the mandate of the PLRA, the Court screened the FAC for purposes of determining whether the action is frivolous or malicious; or fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. After careful review of the FAC, the Court found that, while the factual allegations might be sufficient to state a claim for the excessive use of force against two defendants, the allegations

appeared insufficient to state a claim against most of the named defendants. Accordingly, the FAC was dismissed with leave to amend, and plaintiff was ordered, if he wished to pursue the action, to file a Second Amended Complaint no later than November 30, 2016. Further, plaintiff was admonished that, if he failed to timely file a Second Amended Complaint, or failed to remedy the deficiencies of his pleading, the Court would recommend that this action be dismissed without leave to amend and with prejudice. (*See* ECF No. 19.)

Following two extensions of time, plaintiff filed a Second Amended Complaint ("SAC") on February 3, 2017. (ECF No. 24.) In the SAC, plaintiff continues to name as defendants Warden Soto; Assistant Warden R. Fritz; Chief of Inmate Appeals Lozano; various supervisory defendants; Correctional Officers Hasley, Cardenas, and Berryhill; Nurse W. Harris; and R. Harris, a Senior Hearing Officer ("SHO"). (*See* ECF No. 19 at 8-10.) Plaintiff seeks declaratory and injunctive relief as well as monetary compensation. (*Id.* at 36-39.)

The Court's screening of the SAC under the foregoing statutes is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (when determining whether a complaint should be dismissed for failure to state a claim under the PLRA, the court applies the same standard as applied in a motion to dismiss pursuant to Rule 12(b)(6)). In determining whether the pleading states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to plaintiff. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Further, since plaintiff is a prisoner appearing *pro se*, the Court must construe the allegations of the pleading liberally and must afford plaintiff the benefit of any doubt. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (because a prisoner was proceeding *pro se*, "the district court was required to 'afford [him] the benefit of any doubt' in ascertaining what claims he 'raised in his complaint'") (alteration in original). However, the Supreme Court has held that, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); *see also Iqbal*, 556 U.S. at 678 (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation").

After careful review of the SAC under the foregoing standards, the Court finds that the factual allegations may be sufficient to state a claim for the excessive use of force against defendants Hasley, Cardenas, and Berryhill, but the allegations appear insufficient to state any other claim. Accordingly, the SAC is dismissed with leave to amend. *See Rosati*, 791 F.3d at 1039 ("A district court should not dismiss a *pro se* complaint without leave to amend unless it is absolutely clear that

the deficiencies of the complaint could not be cured by amendment.") (internal quotation marks omitted).

**If plaintiff desires to pursue this action, he is ORDERED to file a Third Amended Complaint no later than May 26, 2017, remedying the deficiencies discussed below.** Further, plaintiff is admonished that, if he fails to timely file a Third Amended Complaint, or fails to remedy the deficiencies of this pleading as discussed herein, the Court will recommend that this action be dismissed without leave to amend and with prejudice.[1]

### A. <u>Plaintiff's allegations may be sufficient to state an Eighth Amendment claim against defendants Hasley, Cardenas, and Berryhill.</u>

Plaintiff alleges that Officer Hasley struck plaintiff from behind while plaintiff was not resisting and then plaintiff's feet were "swept from under him" and he was "body slammed" into the floor. Officers Cardenas also hit plaintiff on the "head, face, and body" while plaintiff was on the floor. (ECF No. 24 at 13, 26.) Officer Berryhill "observed" the incident from "his control booth" where he "had a direct line of vision." Officer Berryhill did not use the public address system to prevent the escalation of the situation or order the other officers to stop after they began hitting plaintiff. (*Id*. at 14, 26.)

---

[1] Plaintiff is advised that this Court's determination herein that the allegations in the Second Amended Complaint are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, although this Court believes that you have failed to plead sufficient factual matter in your pleading, accepted as true, to state a claim to relief that is plausible on its face, you are not required to omit any claim or defendant in order to pursue this action. However, if you decide to pursue a claim in a Third Amended Complaint that this Court has found to be insufficient, then this Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately may submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to your right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

The use of excessive force by a prison official against a convicted prisoner constitutes a violation of the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). However, not "every malevolent touch by a prison guard" violates a prisoner's constitutional rights. *Hudson*, 503 U.S. at 9; *see also Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012). The use of force against prisoners "does not amount to a constitutional violation . . . if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)); *see also Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (the constitutional analysis turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm").

In addition, safety officers have a duty to intervene when their fellow officers violate the constitutional rights of a suspect or other citizen, but such a duty only arises if an officer has a "realistic opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000) (finding that "non-shooting officers who were present at the shootouts had no realistic opportunity to intercede" and could not be held liable for failing to prevent the shooting) (internal quotation marks omitted)); *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (supervising sergeant who observed an incident involving a detainee at a jail may be held liable for failing to intervene); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison officials can violate a prisoner's Eighth Amendment rights by failing to intervene, if they had an opportunity to intervene).

Here, plaintiff's factual allegations, accepted as true and construed in the light most favorable to plaintiff, appear sufficient to plausibly suggest that Officers Hasley and Cardenas used force maliciously and sadistically during the incident on December 28, 2012. Further, giving plaintiff the benefit of the doubt as a *pro se* prisoner litigant, the factual allegations in the SAC are sufficient to "nudge" a claim

against Officer Berryhill for failing to intervene during the incident "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

If plaintiff wishes to proceed on his claims under the Eighth Amendment for the use of excessive force against defendants Hasley, Cardenas, and Berryhill, then plaintiff should set forth these claims in a Third Amended Complaint.

**B.     Plaintiff's allegations remain insufficient to state an Eighth Amendment for inadequate medical care.**

Plaintiff's SAC appears to allege that he was provided inadequate medical treatment following the incident on December 28, 2012, in which excessive force was used. Plaintiff alleges that he "made several requests" for medical treatment to defendant Villalobos, but he was not taken to the treatment center until approximately 17:00 hours. (ECF No. 24 at 16.) Plaintiff complained to Nurse Harris of "nausea, dizziness, blurred vision, excruciating headache and back pain," and he showed the nurse his bruises and cuts. (*Id.*) Nurse Harris failed to follow a "concussion protocol," "refused to diagnose" plaintiff, and only noted a "bruise." (*Id.* at 16-17, 22, 35.) Plaintiff further contends that his "head injury was readily apparent," but Nurse Harris failed to place plaintiff under observation and disregarded the excessive risk to plaintiff's health. (*Id.* at 22-23, 35-36.) As a result of Nurse Harris' actions, plaintiff suffers continuing injuries including vision problems, memory loss, lack of concentration, headaches, and post-traumatic stress." (*Id.* at 24, 36.)

Later, while confined to segregated housing ("ASU"), plaintiff "submitted several sick-call requests" regarding his blurred vision, dizziness, and constant headaches to the "medical staff." (*Id.* at 23.) Plaintiff did not receive "follow-up" treatment. (*Id.*) Plaintiff also sets forth factual allegations concerning "psychological trauma" and visits with staff psychologists who are not named as defendants herein. (*Id.* at 24.) Plaintiff alleges that he informed these

psychologists that he had been attacked by his cellmates since 2001 and that "officers are trying to target him." (*Id.* at 24-25.)

As the Court previously has admonished plaintiff, to the extent that plaintiff is purporting to allege that one or more defendants provided inadequate medical care at any time, in order to establish a claim under the Eighth Amendment for inadequate medical care, a prisoner must show that a specific defendant was deliberately indifferent to his serious medical needs. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "This includes both an objective standard — that the deprivation was serious enough to constitute cruel and unusual punishment — and a subjective standard — deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks omitted).

First, to meet the objective element of a deliberate indifference claim, "a prisoner must demonstrate the existence of a serious medical need." *Colwell*, 763 F.3d at 1066. "A medical need is serious if failure to treat it will result in significant injury or the 'unnecessary and wanton infliction of pain.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 946 (2015) (internal quotation marks omitted).

Second, to meet the subjective element, a prisoner must "demonstrate that the prison official acted with deliberate indifference." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). Deliberate indifference may be manifest by the intentional denial, delay or interference with a plaintiff's medical care. *See Estelle*, 429 U.S. at 104-05. The prison official, however, "must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, an inadvertent failure to provide adequate medical care, negligence, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, all are

insufficient to constitute an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105-07; *Toguchi*, 391 F.3d at 1059-60; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Moreover, the Eighth Amendment does not require optimal medical care or even medical care that comports with the community standard of medical care. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Here, plaintiff does not allege that he was suffering from an objectively serious medical condition at the time that he alleges he did not receive treatment from Nurse Harris following the incident on December 28, 2012. Plaintiff's mere disagreement with a medical provider's diagnosis or choice of treatment does not give rise to a federal civil rights claim. *See, e.g., Cano v. Taylor*, 739 F.3d 1214, 1217 (9th Cir 2014) (prisoner's difference of opinion as to his medical treatment "is not actionable"); *Toguchi*, 391 F.3d at 1058 (a prisoner must show that the chosen course of treatment was "medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk" to the prisoner's health). The factual allegations of the SAC reflect that plaintiff received medical treatment approximately two hours after the incident in question. (ECF No. 24 at 12 (incident occurred at "14:45 hours", 16 (plaintiff taken to "medical" at "17:00 hours").) A brief delay in medical care is insufficient to constitute an Eighth Amendment violation. *See, e.g., Shapley*, 766 F.2d at 407 (a mere delay, without more, is insufficient to state a claim of deliberate medical indifference). Further, plaintiff's allegation that Nurse Harris "should have known" that plaintiff was exhibiting symptoms of a concussion, and that Nurse Harris merely filled out a medical evaluation form noting plaintiff's bruise without referring plaintiff to a physician's assistant or doctor, merely allege that Nurse Harris was negligent. (*Id*. at 16-17, 22-

23.) Plaintiff's SAC fails to allege that Nurse Harris had any further contact with plaintiff or that any action or failure to act by Nurse Harris immediately after the alleged use of excessive force *caused* plaintiff not to receive any medical treatment while he was held in ASU.

Plaintiff's conclusory allegation that his continuing medical problems "four years later" are "a result of" Nurse Harris' one-time failure to order further medical evaluation or treatment immediately following the incident on December 28, 2012 (*id.* at 23), is insufficient to raise a reasonable inference that Nurse Harris deliberately decided not to refer plaintiff for treatment with a conscious disregard of an excessive risk to plaintiff or that the alleged failure to recognize symptoms of a concussion *caused* a violation of plaintiff's constitutional rights. *See, e.g., Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible"); *Toguchi*, 391 F.3d at 1058 (plaintiff must show that the course of treatment was "chosen in conscious disregard of an excessive risk to [the prisoner's health" (internal quotation marks omitted, alteration in original); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (stating that courts are not required to make "unreasonable inferences" or "unwarranted deductions of fact" to save a complaint from a motion to dismiss).

In addition, to the extent that plaintiff is purporting to raise a civil rights claim arising from his inadequate medical treatment subsequent to the incident on December 28, 2012, plaintiff fails to allege that any named defendant was responsible for failing to provide plaintiff with medical care at any time after December 28, 2012. In order to state a federal civil rights claim against a particular defendant, plaintiff must allege that a defendant took an action, participated in another's action, or omitted to perform an act that he or she was legally required to do that *caused* a violation of plaintiff's constitutional rights. "A person deprives another 'of a constitutional right, within the meaning of § 1983, if he does an

affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiffs complain].'" *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (emphasis and alteration in original)). Plaintiff's SAC only alleges that he "submitted several sick-call requests" to unidentified "medical staff," and that he did not receive "follow-up" treatment. (ECF No. 24 at 23.) The SAC does not allege that any named defendant took any action or failed to take an action that he or she was required to do that *caused* the lack of medical care while plaintiff was assigned to ASU. Moreover, the factual allegations concerning plaintiff's "psychological trauma" give rise to a reasonable inference that plaintiff's continuing medical problems may have been caused by the alleged violence plaintiff has suffered from his cellmates rather than by the actions of any defendant named in this action. (ECF No. 24 at 24-25.)

Accordingly, the Court finds that plaintiff's factual allegations, even accepted as true and construed in the light most favorable to plaintiff, are insufficient to nudge any claim for inadequate medical care pursuant to the Eighth Amendment "across the line from conceivable to plausible."

### C. Plaintiff's allegations are insufficient to state a claim against the supervisory defendants.

Plaintiff names as defendants Warden Soto, Sergeant Villalobos, Lieutenant Brown, and Assistant Warden Fritz (ECF No. 24 at 8-9) and purports to state a cause of action for "failure to train and supervise" against these defendants (*id.* at 21-22). Plaintiff states the entirely conclusory allegation that defendants Soto, Fritz, Brown, and Villalobos were "placed on notice of the abusive conduct of defendants T. Hasley and E. Cardenas by their own institutional reports regarding the use of force and by a number of complaints and grievances filed over an extended period of time" (*id.* at 15), but he fails to set forth factual allegations that

any of the named defendants were aware of any prior similar complaints involving defendants Officers Hasley and Cardenas.

In order to state a claim for failure to train, plaintiff must allege that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [entity] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). The Supreme Court has emphasized that "[d]eliberate indifference is a stringent standard of fault, requiring proof that a [official] disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted). "Thus, when [a prison's] policymakers are on actual or constructive notice that a particular omission in their training program causes [the entity's] employees to violate citizens' constitutional rights, the [entity] may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* Further, "to demonstrate that the [entity] was on notice of a constitutionally significant gap in its training, it is 'ordinarily necessary' for a plaintiff to demonstrate a 'pattern of similar constitutional violations by untrained employees.'" *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016) (en banc) (quoting *Connick*, 563 U.S. at 62).

Plaintiff's SAC includes a list of "inmates claims of staff misconduct/excessive use of force" that appears to reference other inmates' complaints concerning the two correctional officers, but he fails to include any dates and specific allegations. (*Id.* at 29.) To the extent that the Court can decipher plaintiff's allegations, he appears to allege that defendant Hasley was involved in one other complaint of excessive force and that defendant Cardenas was involved in three prior incidents. To the extent that plaintiff is purporting to allege that defendants Soto, Fritz, Brown, and Villalobos were deliberately indifferent to the need for more or different training based on the listed incidents, plaintiff must set

forth factual allegations raising a reasonable inference that each of the named defendants "disregarded a known or obvious" consequence of an omission in their training program regarding the use of force by correctional officers. Allegations of an isolated incident or two with a few inadequately trained individuals do not raise an inference either that inadequate training caused the alleged constitutional violation of which plaintiff complains, or that any supervisory defendant was deliberately indifferent to a lack of training. *See Marsh v. County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) (allegations of an isolated instance of a constitutional violation are insufficient to support a "failure to train" theory).

In addition, to the extent that plaintiff is seeking to hold any named defendant liable based on his or her supervisory role (*id.* at 9 (Fritz, Brown, and Villalobos "were the direct supervisors"); at 21 (the use of force was the "direct result" by "officials with 'supervisory roles'"), at 28 (claim for "failure to supervise")), the Supreme Court has emphasized that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. Rather, plaintiff must allege that each defendant "through the official's own individual actions, has violated the Constitution." *Id.* at 676-77 ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). *See also Starr*, 652 F.3d at 1207 (a supervisor is liable only if he or she is personally involved in the constitutional deprivation or there exists a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation" (internal quotation marks omitted). The SAC fails to set forth any factual allegations of any alleged wrongful conduct of these supervisory defendants that plaintiff alleges *caused* his constitutional violations.

Accordingly, the Court finds that the SAC fails to set forth sufficient factual allegations to raise a reasonable inference that any named supervisory official was personally involved in any action causing plaintiff's injury, or knew of and

13

disregarded an inadequacy in the training program or the existence of a pattern of similar incidents.

## D. **Plaintiff's allegations are insufficient to state a claim arising from his administrative grievance.**

Plaintiff names the Chief of Inmate Appeals Lozano, and "Hiring Authority" Miguel as defendants. It appears to the Court that plaintiff is purporting to hold these defendants liable based on their handling of plaintiff's complaints of staff misconduct and administrative appeal. Plaintiff alleges that the defendants "failed to properly investigate" his appeals. (*See* ECF No. 24 at 9, 20-21.)

A prisoner has no constitutional right to an effective grievance or appeal procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). In addition, the guarantee of substantive and procedural due process under the Fourteenth Amendment applies only when a constitutionally protected liberty or property interest is at stake. *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977). An administrative appeal system does not implicate a liberty interest protected by the Due Process Clause. *See, e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). In his SAC, plaintiff fails to set forth any factual allegations that raise a reasonable inference that a specific defendant responsible for handling plaintiff's grievance "actually knew" that his or her failure to adequately resolve the grievance placed plaintiff at a serious risk. *See, e.g., Peralta*, 744 F.3d at 1087 (defendant's "failure to follow required procedure for inmate appeals "isn't, of itself, enough to establish a violation of [prisoner's] constitutional rights," the prisoner must show both that the failure "put inmates at risk" and that the defendant "actually knew that his actions put inmates at risk" (emphasis in original)). Plaintiff's SAC fails to set forth factual

14

allegations raising a reasonable inference that defendants Lozano or Miguel knew that any action they took or failed to take put inmates at risk.

E. **Plaintiff's allegations are insufficient to state a due process claim arising from the disciplinary hearing.**

Plaintiff alleges that defendant SHO Harris violated plaintiff's due process rights in connection with the RVR. (ECF No. 24 at 9, 18.) Plaintiff alleges that SHO Harris conducted a "disciplinary hearing without ensuring that [plaintiff's] absence was in fact voluntary" after plaintiff refused to leave his cell when asked to do so by a correctional officer. (*Id.* at 18.) Plaintiff also alleges that SRO Harris failed to call witnesses requested by plaintiff and to consider other evidence. (*Id.* at 18-19, 27.) Following the hearing held in plaintiff's absence, plaintiff was found guilty of battery on a peace officer. (*Id.* at 19.) Plaintiff alleges that the disciplinary action did not impact the length of his sentence because he has been sentenced to an indeterminate life sentence. (*Id.* at 39.)

As noted above, the federal guarantee of procedural due process under the Fourteenth Amendment applies only when a constitutionally protected liberty interest is at stake. *See Ingraham*, 430 U.S. at 672. In the prison context, the Supreme Court has held that the Due Process Clause does not protect a prisoner's alleged liberty interest where a sanction "is within the normal limits or range of custody which the conviction has authorized the State to impose." *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Constitutionally protected liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). As observed by the Supreme Court in *Sandin*, 515 U.S. at 484-87, due process does not protect every change in the

conditions of confinement that results in a substantial adverse impact on the prisoner. For example, courts have held that a prisoner does not have a constitutionally protected liberty interest in remaining in the general prison population (*see Anderson v. County of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995)); that temporarily confining a prisoner in severe conditions during an investigative contraband watch does not give rise to a protected liberty interest (*see Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013)), and that placing a prisoner in disciplinary segregation for a brief time for violating prison regulations does not violate a protected liberty interest (*see Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995)).

Here, plaintiff alleges that he was placed in ASU for "350+ days with almost no interpersonal contact, except when he was served his meals, an occasional walk to the exercise cage and the once a week visit by [a] mental health worker." (ECF No. 24 at 33.) Plaintiff also alleges that he was confined to his cell for "about 23 hours a day," was prevented from working or attending training programs (*id*.), and was not allowed to "attend outdoor recreation in a congregate [sic] setting" or engage in sports (*id.* at 34). Further, although he alleges that he had almost no contact with others, plaintiff contradictorily alleges that he "was living in constant fear of further retaliation by correctional officers who . . . beat him up." (*Id.* at 33.)

These allegations are insufficient to raise a reasonable inference that plaintiff's approximately one year in the ASU subjected plaintiff to conditions that were sufficiently harsh in relation to the ordinary incidents of prison life for a sufficiently long period of time to pose an atypical and significant hardship. Plaintiff alleges that he was visited weekly by a mental health worker and that he was allowed to exercise, but not in a "congregate setting." (*Id.* at 33-34.) In contrast, the Ninth Circuit has found that a *twenty-seven* month confinement in an "Intensive Management Unit" — in which the prisoner was subjected to "solitary confinement for over twenty-three hours each day with almost no interpersonal

contact" and denied most privileges provided to inmates in the general population — imposed an atypical and significant hardship that implicated a protected liberty interest. *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 988 (9th Cir. 2014); *see also Serrano v. Francis*, 345 F.3d 1071 1078-79 (9th Cir. 2003) (finding a state-created liberty interest arising from the unique situation of a disabled inmate being confined to administrative segregation for nearly two months without his wheelchair, not being able to use the toilet without crawling across the floor, not being able to take a proper shower, and not being able to partake of any outdoor exercise); *Resnick v. Hayes*, 213 F.3d 443, 448-49 (9th Cir. 2000) (finding no liberty interest where there were no allegations that SHU conditions differed materially from those in discretionary segregation or that they created "a major disruption" in plaintiff's environment).

Accordingly, as presently alleged, the imposition of discipline fails to give rise to a protected liberty interest implicating the Due Process Clause. The Court therefore finds that the SAC fails to allege any facts giving rise to a plausible claim pursuant to the Due Process Clause of the Fourteenth Amendment.

\*\*\*\*\*\*\*\*\*\*\*\*

If plaintiff still desires to pursue this action, **he is ORDERED to file a Third Amended Complaint no later than May 26, 2017**, remedying the pleading deficiencies discussed above. The Third Amended Complaint should bear the docket number assigned in this case; be labeled "Third Amended Complaint"; and be complete in and of itself without reference to the original Complaint or any other pleading, attachment, or document.

The clerk is directed to send plaintiff a blank Central District civil rights complaint form, which plaintiff is encouraged to utilize. Plaintiff is admonished that he must sign and date the civil rights complaint form, and he must use the space provided in the form to set forth all of the claims that he wishes to assert in a Third Amended Complaint.

In addition, if plaintiff no longer wishes to pursue this action, he may request a voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a). The clerk also is directed to attach a Notice of Dismissal form for plaintiff's convenience.

Plaintiff is further admonished that, if he fails to timely file a Third Amended Complaint, or fails to remedy the deficiencies of this pleading as discussed herein, the Court will recommend that the action be dismissed with prejudice on the grounds set forth above and for failure to diligently prosecute.

**IT IS SO ORDERED**.

DATED: April 14, 2017

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE